

# The Attorney General of Texas

December 31, 1982

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. W. J. Estelle, Jr.
Director
Texas Department of Corrections
P. O. Box 99
Huntsville, Texas    77340

Opinion No. MW-571

Re: Mineral interest owned by private individuals in land formerly owned by Department of Corrections

Dear Mr. Estelle:

In a request for an opinion of this office, you set forth the following facts.

In 1930, the Department of Corrections (the Prison Board) was authorized to sell the Shaw Farm in Bowie County, Texas, under the provisions of article 6203c, section 7, V.T.C.S.

Article 6203c, section 7, also provides that:

> All oil, gas and mineral rights in and to said land shall be reserved to the State of Texas, with the provision that as and when such oil, gas or other minerals are sold, either by lease or otherwise, an equal one-eighth portion of the net proceeds of such sale or sales, shall be paid to the State's vendee of the surface, or the heirs or assigns of said vendee.

On January 31, 1935, the Shaw Farm was sold and conveyed to Mr. C. O. Moser as provided for by the statute.

The General Land Office plans to conduct an oil and gas lease sale on a part of the old Shaw Farm in Bowie County at some time in the future.

Because of this proposed oil and gas lease sale, you desire to know what mineral interest the state's vendee, Mr. C. O. Moser, his heirs or assigns, have in the tract of land to be leased as a consequence of the original sale of the Shaw Farm to Mr. Moser by the Prison Board on January 31, 1935, under authority of article 6203c, section 7.

We do not see any ambiguity in the provisions of the statute under which the surface of the Shaw Farm was sold to Mr. Moser. By

the terms of the statute quoted above, all of the oil, gas and mineral rights to the Shaw Farm were reserved to the state at the time of such sale in 1935.

By the proviso or provision in the statute which immediately follows the mineral reservation, the vendee of the surface estate, his heirs or assigns, shall receive an equal one-eighth of the net proceeds of the sale of the oil and gas. This proviso does not create an interest in the mineral estate of the Shaw Farm. The mineral estate is in the state of Texas. The proviso creates only an interest in the net proceeds of the sale of minerals by the state, which interest is in the nature of an incorporeal hereditament.

We can readily visualize two types of sales of the oil and gas under the Shaw Farm being made by the state: either a sale of the fee simple absolute in the oil and gas for a fixed price, or a sale by an oil and gas lease (fee simple determinable) containing a provision for the payment of bonus, rent, and royalty.

Webster's New International Dictionary, 2d Edition, defines the word "net" as follows:

> Free from all charges or deductions: as (a) remaining after the deductions of all charges, outlay, or loss.

Webster's defines the word "proceeds" as follows:

> The total amount or the profit arising from an investment, transaction, levee, or business.

It was held in the case of Sheppard v. Stanolind Oil and Gas Company, 125 S.W.2d 643, (Tex. Civ. App. - Austin 1939, err. ref'd), that everything paid or contracted, whether in money or in oil or its proceeds, as distinguished from delay rentals, constitutes a part of the purchase price of an oil and gas lease.

Thus, "net proceeds of the sale" by the state of Texas of the oil and gas underlying the Shaw Farm by the means of a conveyance in fee simple absolute at a fixed price would be the amount of money that the state would receive from the sale after deducting therefrom the state's negligible expenses incurred in conducting the sale.

The "net proceeds of the sale" by the state of Texas of the oil and gas underlying the Shaw Farm through the means of an oil and gas lease would be the amount of money in bonus and amount of royalty (whether received in kind or in monetary value) that the state would receive from the sale after deducting therefrom the state's negligible expenses in conducting the sale.

As examples, if the state should sell its oil and gas interest in the Shaw Farm in fee simple absolute for a fixed amount, for example

$80,000, minus expenses, then the surface owner, his heirs or assigns, would be entitled to one-eighth of this amount or approximately $10,000.  The state would be entitled to receive approximately $70,000.

If the state should sell its oil and gas interest by an oil and gas lease (which is a fee simple determinable) that provided for an $8,000 cash bonus, except for expenses, and a one-eighth royalty, then the surface owner, his heirs or assigns would receive one-eighth of this cash bonus and one-eighth of this royalty, i.e., approximately $1,000 bonus and 1/64th royalty, the one-eighth portion of the net proceeds of the sale being uniformly applied to all of the sale price consisting of both the bonus and the royalty.  The state would, of course, receive approximately $7,000 bonus and 7/64th of the royalty.

## S U M M A R Y

The state's vendee of the Shaw Farm, Mr. C. O. Moser, his heirs or assigns, which farm was sold by the state under authority of article 6203c, section 7, V.T.C.S., has no mineral interest in the Shaw Farm. Mr. Moser, his heirs or assigns, have only a one-eighth interest in the net proceeds to be received by the state from the sale of the proposed oil and gas lease which interest is in the nature of an incorporeal hereditament.

Very truly yours,

M A R K    W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by J. Milton Richardson
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Jim Moellinger
J. Milton Richardson
Bruce Youngblood